UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| ANTHONY HAYES, | ) | | |
| | ) | | |
| *Plaintiff*, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:06-cv-158 |
| | ) | | (VARLAN/GUYTON) |
| | ) | | |
| STATE OF TENNESSEE, et al., | ) | | |
| | ) | | |
| *Defendants*. | ) | | |

## **MEMORANDUM**

This is a *pro se* prisoner's civil rights action pursuant to 42 U.S.C. §§ 1983 and 2000cc. The matter is before the court on the renewed motion for summary judgment filed by the defendants and plaintiff's response to the original motion for summary judgment. For the following reasons, the motion for summary judgment [Doc. 58] will be **GRANTED**.

I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). *See also Kochins v. Linden-*

*Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 710 (6th Cir. 1985). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

> Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.

*60 Ivy Street Corp. v. Alexander*, 822 F.2d at 1435-36 (citations omitted).

Once the moving party presents evidence sufficient to support a motion for summary judgment, the non-moving party is not entitled to a trial merely on the basis of allegations. The non-moving party must present some significant probative evidence to support its position. *White v. Turfway Park Racing Association, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990); *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). Mere allegations of a cause of action will no longer suffice to get a plaintiff's case to the jury. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

Summary judgment should not be disfavored and may be an appropriate avenue for the "just, speedy and inexpensive determination" of an action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

II.   Factual Background

Plaintiff Anthony Hayes ("Hayes") is in the custody of the Tennessee Department of Correction and housed at the Brushy Mountain Correctional Complex. He seeks to bring this action as a class action, on behalf of all others similarly situated, and alleges the deprivation of his rights to the free exercise of religion, free speech, and equal protection, in violation of 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. The State of Tennessee, the Tennessee Department of Correction (TDOC), and numerous TDOC and prison officials are named as defendants.

Hayes subscribes to the Christian Identity Faith, which promotes white supremacy, racial purity, and the separation of the races. He specifically alleges that his right to practice his religion, including the right to receive literature and other materials concerning his faith, has been violated. Hayes also alleges that the TDOC policies regarding security threat groups (STG) criteria and restrictions on inmate mail, which are the basis for the prohibition on Christian Identity literature, are vague and overbroad. Hayes seeks to require the TDOC to recognize the Christian Identity Faith as a legitimate religion, that he be allowed to receive

3

literature concerning his faith, and that the TDOC be enjoined from adopting unconstitutional STG criteria.[1]

III.     Discussion

Prisoners have a First Amendment right to practice their religious beliefs. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). This right is not unlimited, however. All that is required under the First Amendment is that prisoners be provided "reasonable opportunities" to practice their religion. *Id.* In addition, prison regulations may restrict an inmate's First Amendment rights.

> "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law."

*Pell v. Procunier*, 417 U.S. 817, 822 (1974).

When a prison regulation infringes upon an inmate's First Amendment religious practices, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). As the Supreme Court has noted,

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial

---

[1] Hayes originally sought money damages as well as injunctive relief. In his Pretrial Narrative Statement and in a proposed amended complaint, Hayes has dropped his request for money damages and now only seeks injunctive relief.

4

detainees. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (footnote omitted) (citations omitted) (quoting *Pell v. Procunier*, 417 U.S. 817, 823 (1974)). Thus, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policy and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547. *See also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq. (RLUIPA) expanded the First Amendment protections accorded prisoners with respect to their religious beliefs and specifically provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ..., unless the government demonstrates that imposition of the burden on that person --
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrict means of furthering that compelling governmental interest."

*Id.*, § 2000cc-1(a). RLUIPA does not, however, require a prison to accommodate a religious practice that jeopardizes institutional security. *Cutter v. Wilkinson*, 544 U.S. 724, 722 (2005) ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety.").

In support of their motion for summary judgment, the defendants submitted the following: selected portions of Hayes' deposition [Doc. 64], in which he admitted he received certain Christian Identity literature from another inmate who ordered it without any problem; the affidavit of TDOC Commissioner George Little [Doc. 60], who testifies that he has authorized Hayes to change his religious preference on the prison computer system to Christian Israel Identity; and three affidavits from Cile Crowder, TDOC Department Policy Manager. Attached to Mr. Crowder's affidavits are TDOC policies establishing procedures for STG identification, inmate mail, and religious programs. [Docs. 61-63, respectively].

As evidenced by a grievance attached to Hayes' complaint, on April 21, 2005, he was not allowed to receive literature from The New Christian Crusade Church because it was found by Warden Jack Morgan to contain STG information that posed a potential risk to the security of the prison and safety of inmates and staff; TDOC Assistant Commissioner of Operations Roland Colson concurred with Warden Morgan's decision and denied Hayes' appeal. [Doc. 3, Complaint, Collective Exhibit A, Part 2, Memorandum from Warden Jack Morgan to Anthony Hayes dated April 21, 2005, & Letter from Assistant Commissioner Roland Colson to Anthony Hayes dated June 7, 2005].

6

Case 3:06-cv-00158   Document 83   Filed 03/31/09   Page 6 of 10   PageID #: 83

Defendants contend that because Hayes received this literature from another inmate, his request for injunctive relief in this regard is moot. The defendants' argument, however, ignores the fact that Hayes *on his own* may not be able to receive additional material concerning the Christian Identity Faith. Nevertheless, because the literature in question was properly found objectionable, *infra*, Hayes is not entitled to relief on this claim.

Defendants further contend that the TDOC policies are constitutional on their face and that the warden properly applied the policies to bar Hayes from receiving this literature because of its inflammatory content. Copies of the literature in question are attached as exhibits to Hayes' deposition.

This court has previously ruled that the TDOC policy concerning restrictions on inmate mail is constitutional on its face.

> The Sixth Circuit has held that TDOC Policy # 507.02 is valid on its face, with respect to banning mail that advocates anarchy. *Thompson v. Campbell*, 81 Fed.Appx. 563, 567 (November 20, 2003) ("we agree with the district court that the policy on its face satisfies the Constitution"). Clearly, a prison policy prohibiting inmate mail that involves security threat group activity is likewise constitutional.

*Mize v. Lewis*, Civil Action No. 3:03-cv-601, 2006 WL 2711688 at *5 (E.D. Tenn. Sept. 21, 2006) (order granting defendants' motion for summary judgment).

In support of their contention that this policy was constitutionally applied in this case, the defendants rely on the court's decision in *Mize*, as well as the court's decision in another case involving the Christian Identity Faith, *Ricky Puryear*, Civil Action No. 3:03-cv-473, 2005 WL 1118050 (E.D. Tenn. May 10, 2005) (order granting defendants' motion for

7

summary judgment, finding that literature from groups involved in the Christian Identity movement was properly prohibited because it involved security threat group activity).

In *Mize* and *Puryear*, the defendants submitted affidavits from the respective wardens that each warden had personally reviewed the literature in question and determined it involved security threat group activity. For that reason, the court granted the defendants' motions for summary judgment.

> Mize, of course, is free to believe what he wants to believe, but it was within Warden Lewis' discretion, pursuant to TDOC policy, to refuse plaintiff possession of literature she found to involve security threat group activity. Such refusal was reasonably related to the essential goal of maintaining prison security.

*Mize v. Lewis*, 2006 WL 2711688 at *6; *Puryear v. Mills*, 2005 WL 1118050 at *4 ("Pursuant to TDOC policy, however, it was within defendant Mills' discretion to refusal plaintiff possession of the book. Such refusal was reasonably related to the essential goal of maintaining prison security, given defendant Mills' conclusion that it could incite violence based upon race."). *See also Goss v. Myers*, No. 99-5544, 2000 WL 125905 *1 (6th Cir. January 28, 2000) (unpublished decision) (prisoner's civil rights action for the rejection of mail concerning "Hebrew Isrealite [*sic*] Identity Christian/White Separatist" religious beliefs was properly dismissed in light of need to preserve prison security); *Bruton v. McGinnis*, No. 96-1409, 1997 WL 139797 *1 (6th Cir. March 26, 1997) (unpublished decision) (prisoner's civil rights action for rejection of materials associated with the "Christian Identity" faith was properly dismissed based upon legitimate penological interests).

In this case, as noted, there is evidence in the record that the warden and the assistant commissioner of operations personally reviewed the literature in question and found that it posed a potential risk to the security of the prison and safety of inmates and staff. In considering the reasonableness of a restrictive prison regulation in the context of a motion for summary judgment, the court "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities." *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006). Thus, "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Id.* (citation omitted).

With respect to the prison officials' findings that the Christian Identity Faith materials involved security threat group activity, the court will defer to the professional judgment of the prison officials. *Cutter v. Wilkinson*, 544 U.S. at 725 n.13 ("It bears repetition [with respect to accommodations under RLUIPA] that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area."). Accordingly, the defendants are entitled to judgment as a matter of law, under both the First Amendment and RLUIPA, that Hayes was denied Christian Identity literature.

Hayes also complains, as evidenced by a grievance attached to Hayes' complaint, that the chaplain would not allow him to list, on TDOC records, his religious preference as Christian Identity, but rather only as Christian. [Doc. 3, Complaint, Exhibit A, Part 1]. According to Hayes, the term "Christian" is all inclusive and includes faiths not in line with

9

the concepts of the Christian Identity Faith. The defendants contend that this claim is also moot because Commissioner Little allowed Hayes to change his religious preference on the prison computer system to Christian Israel Identity. The record supports the defendants' contention. [Doc. 60, Affidavit of TDOC Commissioner George Little dated July 27, 2007]. Accordingly, Hayes' claim in this regard is moot and the defendants are entitled to judgment as a matter of law.

IV.   Conclusion

The defendants are entitled to judgment as a matter of law as to Hayes' claims under both the First Amendment and RLUIPA, and their motion for summary judgment will be **GRANTED**. The court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

> s/ Thomas A. Varlan
> UNITED STATES DISTRICT JUDGE